UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| RICARDO VASQUEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:21-cv-01693-JMS-MG |
| | ) | |
| INDIANA UNIVERSITY HEALTH, INC., | ) | |
| INDIANA UNIVERSITY HEALTH | ) | |
| BLOOMINGTON, INC., and | ) | |
| DANIEL HANDEL, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiff Dr. Ricardo Vasquez brings this action against Defendants Indiana University Health, Inc. ("IU Health"), Indiana University Health Bloomington, Inc. ("Bloomington Hospital"), and Dr. Daniel Handel, asserting various claims including breach of contract, defamation, and state and federal antitrust claims. [Filing No. 1.] Defendants have filed a Motion to Dismiss, [Filing No. 13], which is now ripe for the Court's decision.[1]

### I.
### STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim that does not state a right to relief. The Federal Rules of Civil Procedure require that a complaint provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic v. Twombly*, 550 U.S.

---

[1] Defendants have also filed a Motion for Oral Argument. [Filing No. 21.] Because the parties' briefs afforded the Court an adequate basis on which to rule on the Motion to Dismiss without the assistance of oral argument, the Court **DENIES** Defendants' Motion for Oral Argument. [Filing No. 21.]

544, 555 (2007.)).  In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff.  *See Active Disposal Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011). A Rule 12(b)(6) motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 570).  The Court may not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief.  *See McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011).  Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level." *Munson v. Gaetz,* 673 F.3d 630, 633 (7th Cir. 2012).  This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## II.
### BACKGROUND

The following factual allegations are taken from the Complaint and are accepted as true solely for the purpose of this order.

Dr. Vasquez is an independent vascular surgeon who practices in the greater Bloomington, Indiana area.  [Filing No. 1 at 3.]  "Vascular surgery is a surgical specialty in which diseases of the vascular system—arteries, veins, and lymphatic circulation—are managed by medical therapy, minimally-invasive catheter procedures (stents), and surgical reconstruction." [Filing No. 1 at 12.] Vascular surgeons receive patients in one of two ways: (1) a referral from the patient's primary care physician, typically an internist or family medicine physician; or (2) the patient is hospitalized, and the treating physician calls a vascular surgeon with "privileges" or the ability to practice at that facility.  [Filing No. 1 at 10-11.]

IU Health is a health care system that operates 14 hospitals throughout the state of Indiana, including Bloomington Hospital.  [Filing No. 1 at 7.]  Dr. Handel is the Chief Medical Officer ("CMO") of Bloomington Hospital.  [Filing No. 1 at 7.]  IU Health also operates additional locations in the region, including IU Health Bedford and IU Health Paoli.  [Filing No. 1 at 7.]  However, patients are frequently transferred to Bloomington Hospital from around the region because it is "the only Level III Trauma center, the only Level I Heart Attack center, and the only Stroke Center" in the region.  [Filing No. 1 at 16.]

### A.    IU Health's Acquisition of Premier Health

In May of 2017, IU Health acquired a rival healthcare provider Premier Healthcare, which was "one of the largest independent physician groups in the state at that time with 40 primary care and specialty physicians."  [Filing No. 1 at 13.]  As part of this acquisition, the only other vascular surgeon in the region at the time became an IU Health employee, and Dr. Vasquez was rendered the only independent vascular surgeon in the area.  [Filing No. 1 at 9.]

Vascular surgery patients are charged two separate fees for treatment: (1) a facility fee, which is the charge for the use of the operating room or facility; and (2) the physician fee, which covers the vascular surgeon's services.  [Filing No. 1 at 10.]  "When [IU Health's] employees perform procedures, IU Health retains both the facility fee and the physician fee, reaping a greater profit."  [Filing No. 1 at 14.]

### B.    Dr. Vasquez's Previous Relationship with IU Health and Bloomington Hospital

Dr. Vasquez held privileges at Bloomington Hospital from 2006 to 2019, which allowed him to perform surgeries at that facility.  [Filing No. 1 at 3.]  During that time, he performed roughly 900 procedures per year at Bloomington Hospital.  [Filing No. 1 at 3.]  Dr. Vasquez also holds privileges at Monroe Hospital and Indiana Specialty Surgery Center.  [Filing No. 1 at 3.]

However, Dr. Vasquez performed the vast majority (over 95%) of his inpatient procedures at Bloomington Hospital.  [Filing No. 1 at 10.]  In addition to providing surgical services, Dr. Vasquez received additional income from IU Health as a Vascular Lab Reader, where he reviewed and analyzed ultrasounds.  [Filing No. 1 at 29.]  Dr. Vasquez was also previously categorized as an in-network provider on IU Health's affiliate health plan.  [Filing No. 1 at 24.]

### C.    Defendants' Retaliatory and Anticompetitive Conduct against Dr. Vasquez

Dr. Vasquez asserts that "IU Health has targeted [him] because he chose to remain an independent physician, threatening IU Health's complete monopoly over vascular surgery services."  [Filing No. 1 at 18.]  Beginning in 2017, Dr. Vasquez asserts that Defendants became "increasingly antagonistic" towards him because he "chose to remain independent" and would not become an IU Health employee.  [Filing No. 1 at 10.]  Dr. Vasquez asserts that the retaliation accelerated as he began finalizing plans to offer the cutting-edge Transcarotid Artery Revascularization ("TCAR") procedure at Bloomington Hospital's competitor, Monroe Hospital.  [Filing No. 1 at 21-22.]  During this time, Dr. Vasquez claims Defendants initiated a "smear campaign" against him designed to "ruin Dr. Vasquez's reputation and practice, eliminate referrals to Dr. Vasquez, and destroy Dr. Vasquez as IU Health's only competitor in vascular surgery in the entire Southern Indiana area."  [Filing No. 1 at 10.]

In furtherance of this campaign, Dr. Vasquez asserts that Dr. Handel, acting as Bloomington Hospital's CMO, began "building a false record" against him by directing nursing staff to create false reports about him.  [Filing No. 1 at 18.]  Dr. Vasquez also claims that Dr. Handel made a "false and defamatory statement that Dr. Vasquez had been the subject of 26 lawsuits, more than any other vascular surgeon in the area."  [Filing No. 1 at 18.]

Using the false reports from nursing staff as justification, Dr. Handel informed Dr. Vasquez that he was required to participate in a distressed physician program, or he would lose his hospital privileges.  [Filing No. 1 at 19.]  Despite full compliance with the program, IU Health revoked Dr. Vasquez's privileges on April 1, 2019 "as retaliation for competing with IU Health and challenging IU Health's monopoly in vascular surgery services."  [Filing No. 1 at 22.]  As evidence of "the retaliatory nature" of Defendants' actions, Dr. Vasquez argues that IU Health breached its own bylaws regarding credentialing by forming an ad hoc committee to investigate him that included Dr. Vasquez's economic competitors.  [Filing No. 1 at 22.]

Finally, on January 17, 2020, IU Health revoked Dr. Vasquez's credentials as a participating provider in the IU Health Plans.  [Filing No. 1 at 21.]  As a result, Dr. Vasquez can no longer perform surgeries at any IU Health facility, cannot serve as a Vascular Lab Reader at Bloomington Hospital, and "cannot receive referrals from IU Health employed or affiliated physicians without the physicians facing retribution and retaliation from IU Health."  [Filing No. 1 at 24.]  Additionally, IU Health insured patients must pay out-of-pocket, at a greater expense, to see Dr. Vasquez.  [Filing No. 1 at 24.]

**D.     This Lawsuit**

Dr. Vasquez asserts a variety of claims against Defendants, including: (1) monopolization and attempted monopolization, in violation of 15 U.S.C. § 2 ("the Sherman Act"), Ind. Code § 24-1-2-2, and Ind. Code § 24-1-2-7, against IU Health and Bloomington Hospital; (2) an anticompetitive merger in violation of 15 U.S.C. § 18 ("the Clayton Act") against IU Health and Bloomington Hospital; (3) breach of contract against Bloomington Hospital; and (4) defamation against all Defendants.  [Filing No. 1 at 31-38.]

> *1. Count One: Monopolization and Attempted Monopolization in Violation of the Sherman Act and Indiana law against IU Health and Bloomington Hospital*

Dr. Vasquez alleges that IU Health and Bloomington Hospital violated the Sherman Act, Ind. Code § 24-1-2-2, and Ind. Code § 24-1-2-7 by acquiring, maintaining, and increasing their monopoly power through exclusionary and anticompetitive conduct rather than through "a superior product, business acumen, or historic accident." [Filing No. 1 at 32-36.]

In support of this claim, Dr. Vasquez alleges that the appropriate product markets are primary care services and vascular surgery services.  [Filing No. 1 at 32.]  Dr. Vasquez further asserts that the relevant geographic market is "Bloomington," and  notes that "[p]atients prefer to stay within Bloomington to receive care, and do not want to travel to Indianapolis or other cities located an hour or further from Bloomington." [Filing No. 1 at 11.]  In the alternative, Dr. Vasquez identifies "Southern Indiana" as the relevant geographic market, which Dr. Vasquez defines as "the area extending from Martinsville, Indiana in the north to Paoli, Indiana in the south along IN-37, encompassing Morgan, Owen, Monroe, Brown, Greene, Daviess, Martin, Lawrence, Orange, and Washington counties." [Filing No. 1 at 11-12.]

Dr. Vasquez alleges that Defendants' actions "harm competition because patients receive lower-quality care and patients cannot receive some vascular surgery services [such as the TCAR procedure] altogether." [Filing No. 1 at 26-27.]  Further, Dr. Vasquez alleges that "IU Health has instituted policies that cause patients . . . to travel out of Bloomington to receive care rather than receiving care locally," which increases morbidity and decreases survivability for patients, who often require frequent travel for continued and ongoing care. [Filing No. 1 at 27-29.]

2. *Count Two: Anticompetitive Merger in Violation of the Clayton Act against IU Health and Bloomington Hospital*

Dr. Vasquez alleges that IU Health and Bloomington Hospital violated 15 U.S.C. § 18 by acquiring Premier Healthcare in May of 2017. [Filing No. 1 at 36.]  Dr. Vasquez alleges that this acquisition was "anticompetitive because the effect was to substantially lessen competition and

create a monopoly in primary care services." [Filing No. 1 at 36.]  Dr. Vasquez alleges that this acquisition gave IU Health and Bloomington Hospital the ability to control referrals, foreclose rivals, charge supracompetitive prices, and reduce the quality of care in vascular surgery services in Bloomington and Southern Indiana. [Filing No. 1 at 37.]

    *3.  Count Three: Breach of Contract, under Indiana law, against Bloomington Hospital*

    Dr. Vasquez alleges that Bloomington Hospital violated the Bloomington Hospital Medical Staff Bylaws, [Filing No. 12-1], when it assigned a direct economic competitor of Dr. Vasquez to the ad hoc committee that ultimately revoked his privileges.  [Filing No. 1 at 37.]  Dr. Vasquez maintains that Bloomington Hospital's bylaws constitute a contract between himself and Bloomington Hospital.  [Filing No. 1 at 37.]  By violating its bylaws, Dr. Vasquez alleges that Bloomington Hospital breached this contract and he incurred damages.  [Filing No. 1 at 37.]

    *4.  Count Four: Defamation, under Indiana Law, against Defendants*

    Dr. Vasquez alleges that Dr. Handel, as an induvial and as an agent of IU Health, defamed him when Dr. Handel made the false and defamatory statement that Dr. Vasquez "had been the subject of 26 lawsuits, more than any other vascular surgeon in the area" [Filing No. 1 at 38.]  Dr. Vasquez alleges this statement was "made with malice and not in good faith." [Filing No. 1 at 38.] Dr. Vasquez alleges that Dr. Handel knew this statement was false at the time he made it and was made "only to impugn Dr. Vasquez's professional reputation and provide pretext for revoking Dr. Vasquez's privileges." [Filing No. 1 at 38.]

### III.
### DISCUSSION

    Defendants filed a Motion to Dismiss seeking dismissal of all of Dr. Vasquez's claims. [Filing No. 12.]  That motion is fully briefed, [Filing No. 13; Filing No. 19; Filing No. 20], and ripe for the Court's decision.

## A.      Dr. Vasquez's Federal Antitrust Claims

In support of their Motion to Dismiss, Defendants argue that neither federal antitrust claim can survive because Dr. Vasquez has failed to properly allege a geographic market.  [Filing No. 13 at 5.]  Additionally, Defendants argue that Dr. Vasquez's Clayton Act claims are time-barred.  [Filing No. 13 at 5.]  The Court addresses each of Defendants' arguments below.

### 1.   *Whether Dr. Vasquez Alleges an Adequate Geographic Market*

Defendants argue that Dr. Vasquez has failed to adequately allege the necessary geographic market required to assert a violation of the Sherman Act or the Clayton Act.  [Filing No. 13 at 6.] Defendants assert that to identify a viable geographic market, the plaintiff must adequately plead both: (1) the "defendant's service area and its competitors"; and (2) where "consumers either do or could turn for alternatives to the defendant's services."  [Filing No. 13 at 7.] Defendants argue that Dr. Vasquez's "bare assertion" that either Bloomington or Southern Indiana is the appropriate geographic market does not meet Dr. Vasquez's "obligation to plead facts, not conclusions, to define the geographic market in which IU Health's actions allegedly have affected competition for vascular surgery services."  [Filing No. 13 at 8.]  Relatedly, Defendants argue that Dr. Vasquez failed to adequately identify where consumers either do or could turn for alternatives to Defendants' services.  [Filing No. 13 at 9.]  Defendants argue that Dr. Vazquez's allegation in the Complaint that patients "do not want to travel to Indianapolis or other cities located an hour or further from Bloomington" is conclusory and "conflicts with case law explaining that specialty healthcare markets are generally not limited to localities like Bloomington."  [Filing No. 13 at 9 (citing Filing No. 1 at 9).]  Further, Defendants argue that Dr. Vasquez's own allegations suggest that Bloomington Hospital's and IU Health's service areas extend beyond Bloomington and Southern Indiana.  [Filing No. 13 at 8.]  Specifically, Defendants take note that Dr. Vasquez alleges

8

that "many of the patients who arrive at Bloomington Hospital for care travel from . . . up to two hours away," yet Dr. Vasquez excludes Indianapolis from his geographic market, even though it is only "an hour away" from Bloomington. [Filing No. 13 at 8 (citing Filing No. 1 at 29).] Additionally, Defendants note that Dr. Vasquez includes cities and regions in his Southern Indiana definition that are as far or further away from Bloomington than Indianapolis. [Filing No. 13 at 13.] Despite this, Defendants observe that Dr. Vasquez pleads that IU Health refers and transfers patients formerly operated on by Dr. Vasquez to Indianapolis for treatment. [Filing No. 13 at 8 (citing Filing No. 1 at 8).] Defendants argue that these assertions "strongly suggest that his alleged market is circumscribed to exclude competing providers in Indianapolis and Marion County," and thus, Dr. Vasquez's claims are impermissibly implausible and should be dismissed. [Filing No. 13 at 11.]

Dr. Vasquez responds that "the relevant geographic market is a fact-intensive issue not properly decided at a motion to dismiss." [Filing No. 19 at 7.] Accordingly, Dr. Vasquez asserts that all he is required to allege at the present stage is "anticompetitive effects in a plausible relevant market." [Filing No. 19 at 10.] Dr. Vasquez asserts that Defendants "cherry pick and misconstrue" allegations in the Complaint to argue Indianapolis should be included in the geographic market presumably "because they believe IU Health is not a monopolist if Indianapolis is considered part" of the geographic market. [Filing No. 19 at 7.] In doing so, he contends, Defendants "ignore the facts pled indicating why vascular surgery services are local," including the need for ongoing monitoring and care. [Filing No. 19 at 9.] Additionally, Dr. Vasquez argues that "Bloomington Hospital and its competitors draw most of their patients" from the Southern Indiana market area. [Filing No. 19 at 10.] Accordingly, Dr. Vasquez maintains, "[w]hat makes Defendants' conduct in this case so egregious and anticompetitive is that they purposefully force patients who may

already have traveled some distance to travel even further to get care . . . by diverting patients to IU Health facilities in Indianapolis rather than providing the same services in Bloomington." [Filing No. 19 at 17.]

Defendants reply that Dr. Vasquez's allegations "flatly contradict or, at a minimum, fail to plausibly support the two relevant geographic markets he asserts in pleading his antitrust claims," and thus should be dismissed.  [Filing No. 20 at 2.]  Defendants argue that "it is chiefly [Dr.] Vasquez's failure to explain how he can plausibly allege that patients in 'Southern Indiana' will travel two hours to Bloomington to visit a vascular surgeon, but will not travel one hour to Indianapolis, Louisville, or another city, that dooms his gerrymandered market allegations as a matter of law."  [Filing No. 20 at 3.]  As such, they argue, "a plaintiff cannot rely on facially contradictory allegations to gerrymander a relevant geographic market to support his antitrust claims."  [Filing No. 20 at 4.]  Defendants argue that Dr. Vasquez's market definitions fail based on his "own allegations that patients travel more than two hours for vascular surgery services." [Filing No. 20 at 8.]

Both of Dr. Vasquez's antitrust claims require him to adequately plead a relevant geographic market.  A Sherman Act claim "requires a showing of possession of monopoly power in the relevant market and the willful acquisition or maintenance of that power." *Wigod v. Chicago Mercantile Exch.*, 81 F.2d 1510, 1520 (7th Cir. 1992).  A Clayton Act claim requires a showing that the acquisition of the assets of another substantially lessens competition in a specific product and geographic market.  *Fed. Trade Comm'n v. Advoc. Health Care Network*, 841 F.3d 460, 467 (7th Cir. 2016).

The geographic market inquiry focuses on the area that the defendant's customers affected by the challenged conduct could practicably turn to for other suppliers if the defendant were to

seek to raise its price or restrict its output. *Id.* at 359. The geographic market must respond to "the commercial realities of the industry," *Brown Shoe Co. v. U.S.*, 370 U.S. 294, 336–337 (1962), and "must include the sellers or producers who have the ability to deprive each other of significant levels of business." *Advoc. Health Care Network*, 841 F.3d at 468 (internal citations omitted). As such, an adequately pled geographic market requires a plaintiff to include both "the market area in which the seller operates, and [the area] to which the purchaser can practicably turn for supplies." *Republic Tobacco Co. v. N. Atl. Trading Co.*, 381 F.3d 717, 738 (7th Cir. 2004) (quoting *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 327 (1961)). The plaintiff bears the burden of defining the relevant market and of establishing the defendants' market power. *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 455 (1993).

Dr. Vasquez has alleged that the relevant geographic market is Bloomington or, in the alternative, Southern Indiana. [Filing No. 1 at 11-12.] While the appropriate geographic market is often a fact-intensive analysis, dismissal under Rule 12(b)(6) may be appropriate when the plaintiff alleges implausibly narrow markets that are suggestive of an attempt "to artificially inflate the defendant's power in the relevant market." *In re Blue Cross Blue Shield Antitrust Litig.*, 2017 WL 2797267, at *9 (N.D. Ala. June 28, 2017); *see also Elliott v. United Ctr.*, 126 F.3d 1003, 1004–05 (7th Cir. 1997); *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997), *Double D Spotting Serv., Inc. v. Supervalu, Inc.*, 136 F.3d 554, 560 (8th Cir. 1998); *TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1025 (10th Cir. 1992). Further, contradictory allegations may render an alleged geographic market implausible. *Arnett Physician Grp., P.C. v. Greater LaFayette Health Servs.*, 382 F. Supp. 2d 1092, 1094–95 (N.D. Ind. 2005).

11

Dr. Vasquez's geographic market definitions are sufficiently contradictory to render them implausible. Despite repeatedly maintaining that "the relevant geographic market for healthcare services is local," [Filing No. 1 at 6], because "[p]atients prefer to stay within Bloomington to receive care, and do not want to travel to Indianapolis or other cities located an hour or further from Bloomington," [Filing No. 1 at 11], Dr. Vasquez dedicates a substantial portion of his Complaint to detailing how "many of the patients who arrive at Bloomington Hospital for care travel from rural areas, some of them up to two hours away." [Filing No. 1 at 29.] This point is underscored by Dr. Vasquez's response to the presently pending motion, in which he argues that "Bloomington Hospital and its competitors draw most of their patients from the [Southern Indiana region] meaning that patients choose to go to Bloomington from those surrounding rural counties." [Filing No. 19 at 10.] It is incongruent that Bloomington would be the appropriate geographic market if a significant portion of Defendants' patients regularly travel substantial distances to get to Bloomington.

Similarly, Dr. Vasquez's alternative geographic market definition, Southern Indiana, is equally contradictory and implausible. Dr. Vasquez asserts that the ten-county area comprises "the primary and secondary service areas for Bloomington Hospital and its direct competitors" where "healthcare providers compete for patients located in the area." [Filing No. 1 at 12.] While it may be true that transferring a patient from the southern end of Dr. Vasquez's proposed market to Indianapolis would cause "unneeded strain on those patients to travel an additional hour to Indianapolis to receive proper care," [Filing No. 1 at 29], Dr. Vasquez does not explain how patients at the northern end of his alternative geographic market would be similarly strained. For example, a patient in Martinsville, Indiana would travel 30 minutes to Bloomington for care or 45

minutes to Indianapolis.[2]  The Court finds it implausible that the additional 15-minute drive would be so burdensome that patients would be rendered unable to turn to Indianapolis for alternative care choices, particularly in light of Dr. Vasquez's repeated assertions that many of his former patients travel to Indianapolis for treatment.  [Filing No. 1 at 5-6.]  Perhaps Defendants are correct in their assertion that the exclusion of Indianapolis is reflective of a "gerrymandered" market that seeks to artificially boost the market power of IU Health and Bloomington Hospital by omitting "the many alternatives available to patients and payors" in Indianapolis.  [Filing No. 13 at 13.]

However, the exclusion of Indianapolis is not the only aspect of Dr. Vasquez's geographic market that makes it implausible that the proposed market reflects the commercial reality of the industry.  For example, patients in Brown County are equidistant from providers in Bloomington and providers in Columbus, Indiana yet the providers in Columbus are excluded as competitors in Dr. Vasquez's market definition.  [Filing No. 1.]  This is true for patients throughout Dr. Vasquez's Southern Indiana region, whether they are in Daviess County with equal access to providers in Bloomington or Evansville, Indiana, or in Washington County where patients are 15 minutes closer to providers in Louisville, Kentucky than to Bloomington.  Dr. Vasquez's inclusion of some geographic areas but the exclusion of others is inexplicable and contradictory.

For the aforementioned reasons, Dr. Vasquez's geographic market definition is facially implausible and, consequently, his Sherman Act and Clayton Act claims fail as a matter of law.  *Arnett Physician Grp*, 382 F. Supp. 2d at 1094–95.  Accordingly, the Court **GRANTS** Defendants'

---

[2]  The Court properly takes judicial notice of and draws its distance estimates from Google Maps, "a source whose accuracy cannot reasonably be questioned, at least for the purpose of determining general distances."  *Cloe v. City of Indianapolis*, 712 F.3d 1171, 1177, (7th Cir. 2013), *overruled on other grounds by Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016); *Brown v. Robinett*, 2021 WL 663378, at *7 n.10 (S.D. Ind. Feb. 19, 2021).

Motion to Dismiss as to Dr. Vasquez's claims under the Sherman Act and the Clayton Act against IU Health and Bloomington Hospital.

## 2. Whether Dr. Vasquez's Clayton Act Claim Is Time-Barred

Defendants also argue that Dr. Vasquez's Clayton Act claims are time-barred. [Filing No. 13 at 14.] Defendants note that, under the Clayton Act, private damages claims are subject to a four-year limitations period while equitable claims are subject to laches, rather than a statutory limitations period, but courts regularly apply a four-year statute of limitations period as a guideline for computing the laches period. [Filing No. 13 at 14-15.] Because Dr. Vasquez did not file suit until more than four years after IU Health merged with Premier Healthcare, Defendants assert that his claim under the Clayton Act is "time barred, and no exception can extend his blown deadline." [Filing No. 13] at 22.]

Dr. Vasquez responds that his Clayton Act claims are "based on Defendants' accumulation of market power that permitted later anticompetitive acts," and thus are not time-barred. [Filing No. 19 at 15.] Dr. Vasquez asserts that "[a]t least three principles—applied to these facts—mean that the Complaint survives dismissal. These are: (1) the accrual rule/discovery rule, (2) the hold-and-use doctrine, and (3) the speculative damages exception." [Filing No. 19 at 16.] Dr. Vasquez argues that the Accrual Rule/Discovery Rule sets forth that the limitations period does not begin to run until the defendant commits an act that injures the plaintiff's business. [Filing No. 19 at 17.] Because "Dr. Vasquez was not injured by lost cases and lost referrals until he lost privileges in April 2019," this is when he asserts that the applicable statute of limitation period begins to run. [Filing No. 19 at 17.] Additionally, Dr. Vasquez asserts that the hold-and-use doctrine "applies where the defendant lawfully acquires assets, but then later uses those assets in a manner that inflicts anticompetitive injury . . . Here, Dr. Vasquez could not have known that IU Health's

14

anticompetitive mergers caused him harm until the retaliation against him ran its course," which would be 2018 at the earliest.  [Filing No. 19 at 17.]  Finally, Dr. Vasquez argues that his claim for damages did not become ripe until "he suffered damages from the alleged antitrust violation." [Filing No. 19 at 18.]  Because Dr. Vasquez "did not have damages beyond speculation until he suffered economic harm from Defendants' action," he could not have brought his Clayton Act claims until "the economic harm occurred when his privileges were revoked in 2019." [Filing No. 19 at 19.]

Defendants reply that Dr. Vasquez's argument "requires the Court either to ignore key allegations in [Dr.] Vasquez's [C]omplaint, or to ignore that lack of any causal connection between his claimed injury and the acquisition." [Filing No. 20 at 8.]

As the parties acknowledge, Dr. Vasquez's Clayton Act claims are subject to a four-year statute of limitations.  15 U.S.C. § 15b; *In re Copper Antitrust Litig.,* 436 F.3d 782, 789 (7th Cir. 2006). However, the parties dispute when the claims accrued.  In the antitrust context, "[a]ccrual is the date on which the statute of limitations begins to run." *Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 449 (7th Cir. 1990).  Generally, this means that "a cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business." *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 338 (1971).  Accordingly, calculating the accrual date for antitrust actions "can be fairly straightforward—often the plaintiff knows that he has been injured by the defendant's alleged antitrust violation as soon as that violation occurs." *In re: Evanston Nw. Healthcare Corp. Antitrust Litig.,* 2016 WL 4720014, at *7 (N.D. Ill. Sept. 9, 2016).

Although claims may accrue later, claims under the Clayton Act generally begin to accrue as soon as the acquisition takes place. *United States v. E.I. du Pont de Nemours & Co.,* 353 U.S. 586, 598 (1957) (citing cases brought under the Clayton Act which hold that claims accrue "at or near

the time of acquisition").  However, where a merger only produces anticompetitive effects post-merger, the accrual date begins when the injury occurred.  *Id.* at 597-98; *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 242 (1975) ("Thus, there can be a violation at some time later even if there was clearly no violation—no realistic threat of restraint of commerce or creation of a monopoly—at the time of the initial acts of acquisition.").

IU Health acquired Premier Healthcare in May of 2017.  [Filing No. 1 at 36.]  Dr. Vasquez did not assert his Clayton Act claims until June 11, 2021, or four years and one month after IU Health acquired Premier Healthcare.  [Filing No. 1; Filing No. 19.]  Despite this, Dr. Vasquez argues that his claim is not time-barred because his injury did not accrue until his privileges were revoked in April of 2019 or "at the earliest" 2018.  [Filing No. 19 at 17-19.]

This contention flatly contradicts Dr. Vasquez's own allegations that: "[i]n approximately 2017, around the time that IU Health acquired Premier Healthcare and several other smaller physician groups, IU Health responded to Dr. Vasquez's desire to remain independent with a systematic and targeted scheme to ruin Dr. Vasquez's reputation and practice, eliminate referrals to Dr. Vasquez, and destroy Dr. Vasquez as IU Health's only competitor in vascular surgery in the entire Southern Indiana area."  [Filing No. 1 at 18.]  Dr. Vasquez further describes the acquisition of Premier Healthcare as the "turning point" which gave IU Health "the ability to foreclose competitors because it now controls where patients receive specialty services, like vascular surgery services."  [Filing No. 1 at 13-14.]  Given his assertion that "IU Health Primary Care Physicians refer to IU Health specialists", [Filing No. 1 at 14], it is difficult for the Court to accept that Dr. Vasquez was not injured or not aware of his injury at the time of the acquisition which resulted in him becoming the only independent vascular surgeon in Bloomington, Indiana, [Filing No. 1 at 8-10], and resulted in "IU Health employ[ing] the only three other vascular surgeons in Southern

Indiana," [Filing No. 1 at 18.]  Furthermore, despite Dr. Vasquez's attempt to conflate the later revocation of his privileges to extend the permissible window for his filing, he has drawn no causal connection between this separate and distinct injury and the acquisition.

Accordingly, Dr. Vasquez's claims under the Clayton Act are time-barred.  Generally, affirmative defenses such as the statute of limitations are not resolved with a motion to dismiss under Rule 12(b)(6). *Hollander v. Brown,* 457 F.3d 688, 691 n. 1 (7th Cir.2006).  Nevertheless, dismissal under Rule 12(b)(6) may be appropriate when a plaintiff "pleads facts that show his suit is time barred or otherwise without merit" and thus has "pleaded himself out of court." *Tregenza v. Great American Communications Co.*, 12 F.3d 717, 718 (7th Cir.1993).  This is exactly what Dr. Vasquez has done here.  In these circumstances, he has alleged facts sufficient to establish a statute of limitations defense and has pleaded himself out of court.

Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss to the extent it finds that Dr. Vasquez's claims under the Clayton Act against IU Health and Bloomington Hospital are time-barred.

### B.      Dr. Vasquez's State Law Claims

Because the Court has granted Defendants' Motion to Dismiss on all of Dr. Vasquez's federal claims, it must determine whether it will exercise supplemental jurisdiction over his remaining state law claims.  28 U.S.C. § 1367(c)(3).  In addition to the federal claims discussed above, Dr. Vasquez asserts several claims under Indiana law, including: (1) violations of Indiana antitrust laws, Ind. Code § 24-1-2-2 and Ind. Code § 24-1-2-7, against IU Health and Bloomington Hospital; (2) breach of contract against Bloomington Hospital; and (3) defamation against all Defendants. [Filing No. 1 at 32-39.]  Dr. Vasquez has previously asserted that this Court has supplemental jurisdiction over his state law claims under 28 U.S.C. § 1367 because his state law claims are

directly related to and form part of the same case or controversy as his federal antitrust claims. [Filing No. 1 at 8.]

Supplemental jurisdiction exists when a federal court acquires an independent basis for subject-matter jurisdiction over a case, which permits a federal court to entertain certain claims or incidental proceedings that would not, on their own, suffice for federal jurisdiction. *See Peacock v. Thomas*, 516 U.S. 349, 355 (1996). The supplemental jurisdiction statute provides that the court may decline to exercise supplemental jurisdiction over state law claims if the court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3).

When deciding whether to exercise supplemental jurisdiction, courts consider and weigh the "values of judicial economy, convenience, fairness, and comity" at every stage of the litigation. *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997). Although the decision is discretionary, it is generally presumed that a district court will "relinquish jurisdiction over supplemental state-law claims when no federal claims remain in advance of a trial." *Walker v. McArdle*, 2021 WL 3161829, at *4 (7th Cir. July 27, 2021); *RWJ Mgmt. Co. v. BP Prod. N. Am., Inc.*, 672 F.3d 476, 479 (7th Cir. 2012); *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010). The Seventh Circuit has observed that, while "the presumption is rebuttable . . . it should not be lightly abandoned, as it is based on a legitimate and substantial concern with minimizing federal intrusion into areas of purely state law." *RWJ Mgmt. Co.*, 672 F.3d at 479 (internal citations omitted.) Examples of case-specific circumstances that may displace the presumption of dismissal include:

> (1) the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided.

*Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 514–15 (7th Cir. 2009) (internal quotations omitted).

The specific circumstances of Dr. Vasquez's claims do not warrant displacing the presumption of dismissal. None of the case-specific circumstances identified by the Seventh Circuit are at issue in the present case, nor would they be implicated by the Court's dismissal of Dr. Vasquez's claims to an appropriate state court. Further, the "values of judicial economy, convenience, fairness, and comity" favor dismissal. *Int'l Coll. of Surgeons,* 522 U.S. at 173.

First, as to judicial economy, the recency of this action dictates that the Court should relinquish jurisdiction over the case. The Court has not expended considerable judicial resources on Dr. Vasquez's claims, which have been before this Court for less than six months. *See Miller Aviation v. Milwaukee County Board of Supervisors,* 273 F.3d 722, 732 (7th Cir. 2001) (finding that a case in which the district court considered 22 motions, held nine hearings, and issued 19 orders over five years would result in a "duplication of effort" by the state court if remanded.)

Second, as far as convenience, there is nothing to suggest that this Court would be more convenient to the parties. The parties have indicated that they are each located in Bloomington, Indiana. [Filing No. 1; Filing No. 13.] Witnesses and evidence related to Dr. Vasquez's claims are also likely located in Bloomington, Indiana. [Filing No. 1; Filing No. 13.] Accordingly, there is nothing to suggest that litigating the case in this Court would be any more or less convenient than doing so in the appropriate state court.

Finally, fairness and comity favor dismissal. The state courts of Indiana are quite capable of resolving this dispute, which now centers on Indiana law. Further, comity requires "respect for the state's interest in applying its own law, along with the state court's greater expertise in applying state law." *Huffman v. Hains*, 865 F.2d 920, 923 (7th Cir. 1989).

Accordingly, the Court declines to exercise supplemental jurisdiction over Dr. Vasquez's state law claims and **DISMISSES** those claims **WITHOUT PREJUDICE**.  The portion of Defendants' Motion to Dismiss that relates to Dr. Vasquez's state law claims is **DENIED AS MOOT**.

## IV.
### CONCLUSION

For the reasons detailed herein, the Court: **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss for Failure to State a Claim, [12], as follows:

- The Motion is **GRANTED** as to Dr. Vasquez's claims under the Sherman Act and the Clayton Act, and those claims are **DISMISSED WITH PREJUDICE**[3]; and

- The Motion is **DENIED AS MOOT** as to Dr. Vasquez's state law claims for: (1) violations of Ind. Code § 24-1-2-2 and Ind. Code § 24-1-2-7 against IU Health and Bloomington Hospital; (2) breach of contract against Bloomington Hospital; and (3) defamation against all Defendants, and those claims are **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction.

The Court also **DENIES** Defendants' Motion for Oral Argument, [21].  Final judgment shall enter accordingly.

Date: 11/5/2021

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

---

[3] Pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), a plaintiff may amend his complaint as a matter of course in response to a motion to dismiss. *Brown v. Bowman*, 2011 WL 1296274, *16 (N.D. Ind. 2011).  The 2009 notes to that rule emphasize that this amendment "will force the pleader to consider carefully and promptly the wisdom of amending to meet the arguments in the motion."  Here, Dr. Vasquez chose not to revise his allegations relating to his Sherman Act and Clayton Act claims despite being aware of Defendants' arguments in support of dismissal and chose instead to brief the current Motion to Dismiss and adjudicate the issues.  The Court is not required to give Dr. Vasquez another chance to plead his federal antitrust claims, and, in its discretion, the Court dismisses those claims with prejudice.

 **Distribution via ECF only to all counsel of record.**