UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RICARDO VASQUEZ Dr., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:21-cv-01693-JMS-MG |
| ) | |
| INDIANA UNIVERSITY HEALTH, INC., ) | |
| INDIANA UNIVERSITY HEALTH ) | |
| BLOOMINGTON, INC. ) | |
|     d/b/a IU HEALTH BLOOMINGTON ) | |
| HOSPITAL, ) | |
| DANIEL HANDEL Dr., ) | |
| ) | |
| Defendants. ) | |

**ORDER**

The parties appeared by counsel for a telephonic status and S.D. Ind. L.R. 37-1 discovery conference on September 8, 2023, to discuss Plaintiff's objections to several of Defendants' requests for production. Plaintiff and Defendants submitted written positions on the issue to the Court in advance of the conference, and the undersigned heard argument from counsel during the conference.

**I.**
**LEGAL STANDARD**

Fed. R. Civ. P. 26(b)(1) provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…." "[R]elevance" for purposes of discovery "is broader than relevance at trial." *Freeman v. Ocwen Loan Serv.*, LLC, 2022 WL 999780, at *2 (S.D. Ind. Apr. 4, 2022) (internal quotation marks and citation omitted). That is so because "during discovery, a broad range of

potentially useful information should be allowed when it pertains to issues raised by the parties' claims." *Id.* (internal quotation marks and citation omitted).

However, even relevant discovery is subject to proportionality and burden limitations. Proportionality is determined by considering "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). In assessing burden, courts also assess whether the discovery sought is "unreasonably cumulative or duplicative or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C).

## II.
### DISCUSSION

The Court analyzes each of the requests on which argument was heard.[1]

**A. Summary of Request No. 66: Defendants request office and patient filings for: (a) patients identified in a complaint filed against Dr. Vasquez with the Indiana Licensing Enforcement Unit ("Licensing Complaint Patients") and patients who previously were treated by Dr. Vasquez; (b) a patient whom Dr. Vasquez declined to treat after the patient complained on Facebook about pain during a surgical procedure ("Facebook Patient"); and (c) a patient who died after receiving treatment by Dr. Vasquez, which resulted in a malpractice jury verdict against Dr. Vasquez in September 2021 ("Malpractice Patient").**

The Court **declines** to order Plaintiff to respond to Request No. 66(a). Defendant argues this request has relevancy for impeachment purposes. However, Defendant has already submitted

---

[1] In the future, the parties should submit the exact wording of the discovery requests in dispute, rather than a summary of each request.

a third-party request to the Indiana Licensing Enforcement Unit.[2] Through the third-party request, Defendants will receive the files reviewed and analyzed by the Licensing Board in making their determination. Therefore, the discovery sought is "unreasonably cumulative or duplicative," and "it can be obtained from another source that is more convenient." Fed. R. Civ. P. 26(b)(2)(C). Should Defendants receive the responses from the Licensing Board and find them to be wholly deficient, Defendants may revisit this request.

However, the Court will **allow** Defendants to pursue Request No. 66(b). Plaintiff maintains the Facebook Patient files are "wholly irrelevant" and Ms. Bakewell testified that "she investigated and was not even sure she could identify whether the Facebook Patient was a patient of Dr. Vasquez." [Parties' Submission at 4.] Ms. Bakewell's deposition answer on this point is unsatisfying. The Facebook Patient file has relevancy for impeachment purposes. It is true that Ms. Bakewell's testimony gives some bearing towards this request being duplicative, but this bearing is minimal and fails upon further review. In fact, Ms. Bakewell's testimony is confusing. Plaintiff knows the name of the Facebook Patient. Whether the Facebook Patient was a patient of Dr. Vasquez's will become clear from a search through his system, as a patient file will either be recovered, or it will not. If Plaintiff discovers the Facebook Patient was not a patient of Dr. Vasquez's, this question is moot. A second search for the Facebook Patient places little burden on Plaintiff. Plaintiff is directed to comply with Request No. 66(b) as described.

The Court **declines** to order Plaintiff to submit his records for the Malpractice Patient within Request No. 66(c). At argument, Defendants' counsel agreed the Malpractice Patient lawsuit was publicly available. The Court finds the available materials regarding the Malpractice

---

[2] And, to the extent that any of the Licensing Complaint Patients were seen by Dr. Vasquez during his time with privileges at IU Health, the Court presumes Defendants have sufficient access to those records.

Patient lawsuit are sufficient and additional office and patient records for the Malpractice Patient are not relevant to the parties' claims or defenses. Moreover, the parties acknowledged Defendants have already received some documents pertaining to the Malpractice Patient.

### B. Summary of Request No. 67: Defendants request all office and patient files for patients who underwent Transcarotid Artery Revascularization ("TCAR") procedure by Dr. Vasquez.

The Court **declines** to order Plaintiff to comply with Request No. 67. Plaintiff has already produced records for all TCAR procedures performed at Monroe hospital. Moreover, Plaintiff has already produced all billings and claims data for Dr. Vasquez's patients, which data would demonstrate the number of TCAR procedures Dr. Vasquez performed.[3] Requiring Plaintiff to produce "all office and patient files" for every patient that underwent a TCAR procedure with Dr. Vasquez is overly broad and imposes a burden not proportional to the needs of the case, a burden not outweighed by Defendants' arguments for relevance.

### C. Summary of Request No. 68: Defendants request all office and patient files for patients who underwent services in Dr. Vasquez's office-based lab ("OBL").

Defendant argued (among other considerations) that the OBL files contain information demonstrating how much time Dr. Vasquez spends on his procedures. Plaintiff countered that this request solicits files for hundreds of patients, and Plaintiff has already submitted billing records and claims records for the OBL patients. The Court agrees this request is overbroad as written, and, given the OBL records that Plaintiff has already produced, not proportional to the needs of the case. The Court **declines** to order the Plaintiff to turn over all office and patient files for patients who underwent services in the OBL.

### D. Summary of Request No. 69: Defendants request documents related to compliance and licensing for Dr. Vasquez's OBL, including documents and materials required as a matter of Indiana law.

---

[3] As would a simple interrogatory or deposition question.

Defendants have withdrawn Request No. 69.

**E. Summary of Request No. 70: Defendants request scheduling and calendar documents from 2017 to the present for Plaintiff and Plaintiff's Clinic.**

The Court initially heard argument on this request at the June 29, 2023, telephonic discovery conference. At that time, Defendants argued they needed access to the daily calendar entries to "find out 'how Dr. Vasquez is spending his time' in terms of developing business." [Filing No. 91 at 4.] Plaintiff responded that compliance would require manually printing each page of the daily schedule and redacting patient-identifying information before producing the pages to Defendants. On balance, the Court found this request not proportional to the needs of the case and declined to order Plaintiff's to produce the daily calendar entries. *Id.* However, sometime between the June 29, 2023, discovery conference and the submissions for the September 8, 2023, discovery conference, Defendants took Dr. Vasquez' deposition.

Defendants now argue that access to the daily calendar entries is necessary to evaluate Plaintiff's damages. Plaintiff claims the loss of referrals from IU Health hurt his business and caused lost profits. [Filing No. 100 at 4.] Further, at Plaintiff's deposition, he testified that this lost volume can be demonstrated by "[l]ess patients on the schedule." [Parties' Submission at 10.] Plaintiff's counsel argued that Dr. Vasquez was referring to the claims and billing data previously produced. This is far from clear from the deposition testimony.[4] On the contrary, Dr. Vasquez specifically referred to the schedule, and at no apparent point did he clarify that he was talking about previously produced claims or billing data. Dr. Vasquez and his clinic keep a daily calendar schedule, and the Court is inclined to agree he was referring to this calendar during his deposition.

---

[4] The deposition language at issue was recited at argument and quoted in the parties' submissions on this matter.

5

Thus, the daily calendar has been arguably thrust into the limelight as a source of support for Plaintiff's damages. It is relevant.

The Court acknowledges Plaintiff's argument that experts have been able to decode Plaintiff's billing data and compare those periods before and after Dr. Vasquez's privileges were taken. However, it remains that the daily schedule will reveal more information regarding Dr. Vasquez's daily calendar activities than do the claims and billing data alone, and these information sources, while overlapping, are not duplicative. Given Dr. Vasquez' deposition testimony and the damages at issue—damages that are, in part, tied to lost income from IU Health referrals—this request has become proportional to the needs of the case and is now **granted**.[5]

Several options for inspection were discussed at the conference, including an Attorneys Eyes Only agreement for Request No. 70, or for Defendants counsel to inspect the calendar entries at Plaintiff's offices.[6] The Parties are therefore to meet and confer upon the facilitation of Request No. 70.

Because of the time-consuming nature of this request, Plaintiff shall have 60 days from the parties' meet and confer to comply with the production of Request No. 70.

---

[5] The parties have a protective order in place. [Filing No. 34.] The Court reminds counsel they are trusted to conscientiously abide by the terms of the proactive order.

[6] Or, perhaps more agreeable to Plaintiff, at Plaintiff's counsels' offices.

## III.
### CONCLUSION

In summary, Defendants' Request Nos. 66(a), 66(c), 67, and 68 are **DENIED**, and Defendants' Request Nos. 66(b) and 70 are **GRANTED**. The parties are **ORDERED** to meet and confer about the above matters within **7 days** of this Order, taking into consideration the guidance provided by the Court. Plaintiff is further **ORDERED** to serve upon Defendants supplemental responses to Request Nos. 66(b) and 70 within 60 days of the parties' meet and confer.

Date: 9/14/2023

*[signature]*
Mario Garcia
United States Magistrate Judge
Southern District of Indiana

**Distribution via ECF to all counsel of record.**